UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| LAURA RISNER ) | |
| ) | |
| Plaintiff, ) | Civil No. 08-160-ART |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION & ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant, ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Laura Risner, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying Risner's application for disability insurance benefits ("DIB"). For the reasons provided below, the Court denies Risner's Motion for Summary Judgment, R. 14, and grants the Defendant's, R. 15.

**BACKGROUND**

Risner filed her application for DIB on June 6, 2003. Transcript ("Tr.") 54–65. Therein, Risner alleged a disability beginning on June 24, 2002, Tr. 54, due to pain and numbness in her hands, pain in her shoulders and arms, and depression, Tr. 22. Risner's application was denied initially and upon reconsideration. Tr. 16. Subsequently, at Risner's request, Administrative Law Judge David A. Redmond ("ALJ") conducted a hearing on November 9, 2005. Tr. 16.

During the hearing, the ALJ heard testimony from Risner and Charlotta Ewers, a vocational expert ("VE"). *Id.* Risner, who was 38 years old at the time of the hearing, has a tenth-grade education and past relevant work experience as school bus driver and punch press

operator, both of which require medium physical exertion. Tr. 22–23. She has also worked as a production assembler, cashier, and toy assembler. *Id.* at 23. At the hearing, Risner testified that she had trigger finger and carpal tunnel surgery on both arms, as well as shoulder surgery, that she's had injections which temporarily relieved her pain and that she now wears splints and takes Flexeril, Vicodin, and Naprosyn daily. *Id.* at 354–57. She testified that her hands ache and lock up so that she has to move her fingers with other fingers, that she cannot tie shoes and can only button one or two buttons, that she cannot raise her arm above shoulder height, that she cannot use glassware without dropping it, that her son does the dishes, that she cannot lift and pour at the same time or sweep or vacuum, that she can only lift three to five pounds and cannot push or pull, that driving and using a computer cause her pain and numbness and she seldom does those activities, that she now has short hair because she could not take care of longer hair, and that she can only cook and do laundry with her son's significant help. *See* Tr. 356–62. Finally, because of these symptoms she testified that she is depressed and hateful towards her son and husband, feels like sleeping all the time, and no longer enjoys activities she used to enjoy. Tr. 348, 360–61.

The physician opinions in the record also indicate that Risner had carpal tunnel surgery in both hands with the release of trigger fingers in 1999. *See* Tr. 267–68 (opinion of Dr. Klug); *see also* Tr. 185–87 (opinion of Dr. Greene). She received a cortisone injection at that time, but Dr. Klug nevertheless diagnosed her with "rather impressive medial epicondylitis of the left elbow" and administered another cortisone injection in February of 2000. Tr. 266. Risner had two more cortisone injections before having another surgery in June of 2002. Tr. 261, 264. Dr. Klug released her to work in October of 2002 with her splints, but limited her to "no hand building, avoidance of push or pulling with the elbows on a repetitive basis, and [no] heavy repetitive

grasping or pinching." Tr. 260. Risner's employer, however, did not have a position for her with these restrictions. *Id.* Risner continued to have hand and elbow problems and in May of 2004 reported severe cramping and aching in her hands. *Id.* at 245.

Meanwhile, Risner had surgery on her left shoulder in March of 2000. Tr. 148–49. Post-surgery, Dr. Daniel Dunaway found that she had recurrent tendinitis in her left shoulder. *Id.* at 140. In January of 2004, Dr. Lynn Crosby concluded Risner's previous surgery had failed and after confirming a "Type II acromion with still outlet impingement," decided that an arthroscopic surgery was necessary. *Id.* at 184. Dr. Crosby performed this surgery in July of 2005. *Id*. at 304-307.

Finally, in September of 2003, Risner began regularly seeing a psychologist, Dr. Miriam Hoefflin, for her depressive symptoms. Tr. 318. Dr. Hoefflin concluded that Risner had problems with emotional stability and unpredictable behavior as a consequence of her chronic pain and the stress of her physical limitations. *Id.* at 324. She also concluded that these physical ailments had caused Risner to be irritable, moody, withdrawn, and emotionally unpredictable at times, and caused her to have problems with memory and in sustaining attention and concentration or carrying out simple instructions. *Id*. at 321–22. According to Risner, she was prescribed Prozac for these symptoms. *Id.* at 348.

## ALJ Analysis

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520©. Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Risner has not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 18. At Step 2, the ALJ found that Risner's medically determinable impairments, "impingement syndrome of the left shoulder with residuals of surgery, bilateral carpal tunnel syndrome with residuals of surgery, left elbow epicondylitis with residuals of surgery, multiple trigger fingers with residuals of surgery, and major depression, recurrent" were "severe" based on the standards set forth in the Regulations, *see* 20 C.F.R. §§ 404.1520©, 404.1521, 416.920©, 416.921. Tr. 18. At Step 3, the ALJ found that Risner's

---

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 19. At Step 4, the ALJ found that Risner possessed some residual functional capacity ("RFC"). Specifically, the ALJ found that

> the claimant [possessed] the residual functional capacity to perform the basic work-related functions of light work with the following restrictions: lift a maximum of five pounds, no reaching overhead, no constant, repetitive motions with the hands and no sustained fine manipulation. She is further limited to simple tasks and minimal personal contacts in the workplace.

Tr. 20.

Based upon that finding, the ALJ concluded that Risner was unable to perform her past relevant work. *Id*. at 23. However, at Step 5, the ALJ determined that there were a significant number of jobs in the economy that Risner could perform. *Id.* at 24. Accordingly, on September 27, 2006, the ALJ issued an unfavorable decision, finding that Risner was not disabled, and therefore, not entitled to DIB. *Id*. at 25. On June 12, 2008, the Appeals Council declined to review the ALJ's decision, Tr. 4, at which point the ALJ's decision became the final decision of the Commissioner of Social Security. Risner now seeks judicial review in this Court. The parties have filed cross motions for summary judgment, *see* R. 14; R. 15, which are now ripe for the Court's review.

## DISCUSSION

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Further, when reviewing the Commissioner's decision, the Court cannot "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). On appeal to this Court, Risner argues that the ALJ improperly discounted the opinions of her treating physicians and improperly determined her testimony incredible. *See* R. 14.

**<u>Treating Physician Testimony</u>**

Risner argues that the ALJ improperly discounted the opinions of her treating physicians Drs. Klug and Hoefflin without giving reasons for doing so. R. 14 at 10–13. The Regulations provide a framework for the evaluation of opinion evidence. With regard to treating source opinion evidence, the applicable Regulation provides:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

> evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The factors considered include the length, frequency, nature, and extent of the treatment relationship, the evidence supporting the opinion, the consistency of the opinion with the records as a whole, the specialization of the doctor, and other relevant factors. *Id.* at (d)2–(6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Thus, although the opinion of a treating source is not necessarily binding, an ALJ is required to set forth some basis for the decision to reject a treating source opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004) (noting that in cases where the treating physician rule applies, a reviewing court must evaluate whether the ALJ gave good reasons for his decision not to give controlling weight to a treating source opinion, as required by the governing Regulation).

*Dr. Klug*

At least twice in his opinion ALJ Redmond mentions that "Dr. Klug, hand surgery specialist, opined in January 2005 that although the claimant could not perform grasping, pinching, lifting, pulling or squeezing with her upper extremities, he did not believe that she was totally and permanently disabled from other types of employment." Tr. 21, 22. Because the ALJ added the word repetitive to this list of restrictions in his residual functional capacity determination and hypothetical, Risner argues that he implicitly and improperly rejected Dr. Klug's opinion. R. 14 at 10.

7

Risner is correct that Dr. Klug's letter, quoted by the ALJ, does not use the word repetitive but instead says:

> I do believe that [Risner's] prognosis for returning to heavy, repetitive assembly work is extremely poor, and will only lead to further problems and possibly further surgery. I do not believe that she can perform this type of work, i.e. grasping, pinching, lifting, pulling, or squeezing with either upper extremity either on a full or part-time basis. However, I do not believe that she is totally and permanently disabled from another type of employment.

Tr. 241. She is not correct, however, that the only possible interpretation of this language is that she cannot do *any* grasping, pinching, lifting, pulling, or squeezing. The ALJ did not implicitly reject Dr. Klug's opinion because the ALJ's interpretation of Dr. Klug's opinion is just as plausible as Risner's. In addition to the letter quoted by the ALJ, Dr. Klug also filled out a Social Security questionnaire. *See* Tr. 243–44. On that questionnaire he explained, "I do believe that Ms. Risner is not able to perform any type of assembly work, i.e., *repetitive* pinching, grasping, lifting, squeezing, or pulling on either a full or part-time basis." *Id*. at 244 (emphasis added). The ALJ's residual functional capacity determination and hypothetical mirror this opinion. Further, Dr. Klug's letter discusses Risner's limitations in the context of her previous heavy assembly work and suggests secretarial or inspection work as an option for Risner, so the ALJ's conclusion that Dr. Klug meant she was unable to perform the kind of repetitive motions required for heavy assembly is consistent with this opinion.[2] In addition, other medical evidence supports the ALJ's

---

[2]To support her argument that Dr. Klug's letter meant she could perform *no* grasping, pinching, lifting, pulling or squeezing with her upper extremities, and that the ALJ's determination did not encompass this limitation, Risner cites to the testimony of the VE. R. 14 at 10–11. Specifically, at the hearing her counsel asked the VE whether the hypothetical could encompass these limitations and the VE responded that it could not and that furthermore, if those limitations were added then that would mean that the claimant could not use her hands and there would be no light duty jobs and only 500 sedentary surveillance system monitor jobs which the claimant could conceivably perform. *See* Tr. 365. Risner uses this testimony to argue that the ALJ improperly rejected the testimony of her treating physician by failing to

8

interpretation of Dr. Klug's opinion that Risner is limited to non-repetitive motions. *See* Tr. 187 (Dr. Greene's records). *But see* Tr. 200–12 (Dr. Gamm's records) (discounted by ALJ). Tr. 348, 354–62 (Risner testimony). Because the ALJ did not reject Dr. Klug's testimony but instead relied upon it in forming his conclusions, Risner's argument fails on this issue.

<u>Dr. Hoefflin</u>

The ALJ in his opinion indicated that he was not giving the opinion of Risner's treating psychologist Dr. Hoefflin controlling weight because it was not supported by the evidence in the record, including medical and clinical findings. Tr. 23. In making this determination, he notes that Dr. Hoefflin saw Risner only on a monthly basis and that Risner has never been hospitalized for any psychiatric or psychological intervention. *Id.* The ALJ is required by the regulations to apply the factors listed in 20 C.F.R. § 404.1527(d)(2)(I), (2)(ii), and (3) through (6) and give good reasons for discounting the testimony of a treating physician. *See Shelman*, 821 F.2d at 321. ALJ Redmond has done so here and has properly discounted the opinion of Dr. Hoefflin. He discussed the lack of objective findings supporting the limitations claimed and inconsistency with the record as a whole. *See* Tr. 23. He mentioned Risner's infrequent visits with Dr. Hoefflin. *See id.* He further found that Risner's allegations were not entirely credible because they were inconsistent with the record as a whole, *id.* at 22, such that to the extent Dr. Hoefflin relied on Risner's subjective statements concerning the intensity, duration, and limiting effect of her symptoms, her opinion was also properly discounted in that regard.

Because the ALJ clearly articulated his reasons for giving Dr. Hoefflin's opinions little

---

accurately state Risner's limitations. *See* R. 14 at 10–11. As discussed above, however, in context it was completely reasonable for the ALJ to interpret Dr. Klug's statement as indicating Risner could not perform these motions repetitively rather than that she could not perform them at all.

weight in light of the overall evidence in the record, the procedural safeguards required by the regulations have been met here. *See, e.g., Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-72 (6th Cir. 2006) (noting that ALJ complied with procedural safeguards of Section 404.1527 because he provided sufficient reasons for rejecting the opinions of the treating physicians); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (affirming ALJ decision not to give treating physician's opinion controlling weight where the opinions were "inconsistent with the overall evidence of record" as this was "a factual determination within his discretion under § 404.1527(d)(2)").

Furthermore, the ALJ's determination of Risner's functioning in terms of her mental health is support by substantial evidence in the record. Specifically, Risner "presented at the hearing as very animated and expressive and did not present as being depressed." Tr. 22. Dr. Jones, a consulting psychologist, indicated that Risner apparently gets along adequately with her family and takes care of family needs and her own hygiene. *Id.* at 165. Furthermore, Dr. Jones concluded that Risner is able to perform simple repetitive tasks, to comprehend and complete simple routine activities of daily living, maintain attention, concentration and persistence, but that her mental ability to withstand the stress and pressures associated with day to day work activity is moderately impaired. *Id.* at 166. This evidence is consistent with the ALJ's conclusion and his discounting of some of Dr. Hoefflin's conclusions. The Regulations require the ALJ to look to the record as a whole–not just to medical opinions–to decide whether substantial evidence is inconsistent with a treating physician's assessment. *See* 20 C.F.R. § 404.1527(d)(2), (4). Under this standard, the ALJ could properly find that Dr. Hoefflin's opinion was not entitled to controlling weight.

**Credibility determination**

Risner also maintains that the ALJ improperly discounted her complaints of pain. A claimant's subjective assessment of her symptoms is relevant to determining whether she suffers from a disability but is not conclusive evidence of a disability. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). An ALJ's credibility determinations are entitled to great deference, "particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F3d 525, 531 (6th Cir. 1997). Nevertheless, an ALJ's determination as to credibility must be supported by substantial evidence. *Id*. The claimant's credibility may be properly discounted "to a certain degree . . . where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence." *Warner*, 375 F.3d at 392 (citing *Walters*, 127 F.3d at 531).

In determining her residual functional capacity, the ALJ found Risner's "statements concerning the intensity, persistence and limiting effects" of her symptoms was not entirely credible. Tr. 22. ALJ Redmond concluded that her typical day of "getting her husband off to work, watching television, putting clothes in washer, and performing some other household chores," combined with her ability to care for her personal hygiene and manage household funds and her animated and expressive demeanor supports his residual functional capacity determination. *Id.* As discussed above, the ALJ's determination of the intensity and impact of Risner's pain is supported by substantial evidence in the record, including the testimony of Drs. Klug and Greene and her ability to care for herself. Thus, to the extent Risner's testimony contradicts these records, the ALJ's determination on Risner's credibility is reasonable.

The Court's "role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). And evaluations of pain are "peculiarly within the province of the ALJ." *Villareal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987). While based on the content of the claimant's testimony this Court would find a higher level of pain and lower level of functioning than the ALJ, the ALJ had the benefit of listening to the claimant's testimony and observing her demeanor, a benefit this Court does not have on a cold record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). This Court gives deference to the ALJ's determination of credibility, and since his determination is supported by substantial evidence, it will not reverse his decision.

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Risner not disabled is supported by substantial evidence. The Court sympathizes with Ms. Risner. Her ailments seem severe and substantial evidence exists in the record to support a conclusion that she is disabled. But, even though the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### III. CONCLUSION

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment, R. 14, is **DENIED**;

(2) Defendant's Motion for Summary Judgment, R. 15, is **GRANTED**; and,

(3) **JUDGMENT** in favor of the Defendant Commissioner will be entered

contemporaneously herewith.

      This the 9th day of April, 2009.